the fence, which removal the appellate division has decided not to have been a violation of the injunction.   If he acted within his rights in removing this fence, it is urged that he cannot be held responsible for the consequences.   This argument proceeds upon a misapprehension of our former decision.   One provision of the judgment forbade the defendants from pulling down or injuring the fences on the premises of the plaintiffs.   We held that the defendant Halstead could not be punished for violating this provision, because it did not appear that the fencing with which he had interfered was on the plaintiffs' land.   In other words, he was enjoined from committing a trespass, and the proof failed to establish that he had committed such trespass.   As to the part of the judgment, however, which prohibited him from permitting persons visiting or using the bath houses to pass over the private road in question, the case is different.   His removal of the fence on his own land, so as to allow such persons to gain convenient access to the private road, though no trespass, was an act indicative of a willingness, not to say desire, on his part, that the patrons of the bath houses should pass over that road, just as it would have been if he had opened a previously locked gate in order to let them through.   We remain of the opinion that he willfully permitted a use of the private road which was forbidden by the injunctive portion of the judgment, and thereby subjected himself to punishment for contempt.

No objection is made to the form of the order, and it should be affirmed, with $10 costs and disbursements.

(25 Misc. Rep. 36.)

COMMERCIAL NAT. BANK OF CLEVELAND v. SYRACUSE RAPID-TRANSIT CO.

(Supreme Court, Special Term, Erie County.   October, 1898.)

INJUNCTION—CORPORATIONS—UNLAWFUL ACT OF DIRECTORS.

Directors, having obtained consent of the stockholders to borrow money for the benefit of the corporate property, secretly agreed among themselves, and for their mutual benefit, to pay one of their number a large sum in cash, besides a large amount in capital stock, as a bonus for negotiating the loan, which they authorized by formal resolution, and were about to pay. *Held*, that an injunction restraining the payment was properly granted.

Action by the Commercial National Bank of Cleveland against the Syracuse Rapid-Transit Company.   Motion to vacate a temporary injunction.   Denied.

Stone, Gannon & Petit, for the motion.
Lewis & Lewis and William B. Sanders, opposed.

SPRING, J.   The defendant is a street-railroad corporation of the city of Syracuse; and plaintiff, a national bank in the city of Cleveland, owns $49,000 of its preferred capital stock.   The defendant needed money to pay pressing outstanding obligations,—mainly interest and taxes,—and also to make extensions deemed advisable, and also to expend in street improvements required by the local au-

thorities of the city of Syracuse. Notices were accordingly mailed to the various stockholders, showing the earnings of the corporation, the urgency of the needs of the company, and consents were obtained of the owners representing more than two-thirds of the capital stock of the company authorizing the directors to borrow $200,000, secured by $500,000 of second mortgage bonds, incumbering all the property of the company, to be due in 10 years, and bearing interest at 5 per cent. By virtue of this explicit authority, and after a clear and precise statement embodied in the notice, showing the solvency of the defendant, its augmented business and net earnings over and above every running charge and expense, the directors managed to arrange with a man named McCarthy to loan to the company $161,000, and with White & Co., $69,000, to be secured, respectively, by these second mortgage bonds; and these loans have been substantially consummated, and $72,000 have already been delivered to the directors, and expended by them for the benefit of the company. The fact was then developed that there was a bonus agreed to be paid to Edward C. Jones & Co., of $30,000 in cash and $70,000 of the capital stock of the company, for negotiating these loans. A resolution was passed by a majority of the directors authorizing the payment of this extraordinary bonus, and that resolution was based upon the representation of Jones as to its necessity, and Jones is a director of the company. While Jones makes an affidavit in attempted vindication of his conduct, and while other representatives of the defendant instrumental in consummating this loan through Jones as a paid intermediary give their version of the transaction, there is no intimation that the lenders were to receive any bonus,—that the transaction with them was any other than a loan of money upon security deemed by them adequate. So we have this remarkable situation of affairs, presenting itself in two aspects: (1) Authority has been procured from the stockholders assenting to the making of a loan of about $200,000, to be secured by the second mortgage bonds on the property and franchise of the corporation, without any suggestion there was any bonus or extra payment in the carrying out of the transaction; and (2) the consummation of this contemplated loan by paying to one of the directors, or to a company of which he seems to be the chief factor, the enormous sum of $30,000, and $70,000 of the stock of the company, and all this preceded by the formal resolution of the directors recommending the payment of this tribute. For what purpose this payment was exacted does not clearly appear in the affidavits of the officers of defendant seeking to defend this peculiar transaction. So far as can be determined from the papers, it was inspired by an endeavor to enrich the director Jones; and if the statements of Conderman, the treasurer of the company, as set forth in the affidavits on behalf of plaintiff, are correct, other of these directors were to share with him in this division of spoils at the expense of a corporation now claimed by the directors upholding this proceeding to be in a precarious condition. From whatever aspect the proceeding is viewed, it is wholly indefensible and unconscionable. The directors procured the assents of the stockholders to make a loan for specific purposes. These officials were the representatives, the

servants, of these stockholders, the owners of this property. The principals were entitled to full notice of the contemplated loan, including information of any extra allowance to be contributed for negotiating it. The fact the communication so glibly parading the solvency of the corporation forbears any reference to this exaction is sufficient warrant for the statement that it was agreed upon surreptitiously by the directors, and with a view to their personal benefit. A tribute so liberal to one or more of the directors should not be upheld, unless sanctioned by the stockholders. The directors have subjected themselves to the suspicion of carrying through the project under cover, and with the object of preventing the stockholders from knowing its true inwardness. Good faith, open-handed, sincere conduct, on the part of these officials acting in a fiduciary capacity, required that they should advise with the owners. They did exactly the reverse. They obtained consent to a loan, and every person giving it must have done so in the belief that the company was to receive a full return for the obligations it authorized. The attempt to justify this transaction upon the ground of its necessity fails most lamentably. The statement rendered by these same directors shows minutely the responsibility of defendant, the increasing value of this property and franchise. The reason why the loan was desired was to enhance the growth and extend the earning power of a profitable investment. Every stockholder reading this glowing report must have considered his stock as valuable property. But now, in justification of this scheme to pay Jones and his associates the enormous tribute designed to obtain this loan, it is urged by these same officials that the corporation is practically bankrupt, and that in no other way could the money be obtained. No such usurious exaction was demanded by the mortgagees. They apparently were willing to loan the money, and have done so already, in part, at least, entirely satisfied with the adequacy of the securities issued under the express sanction of the owners of the franchise.

Any project which is founded upon an attempt of directors to enrich themselves out of the property of the corporation whose interests they are elected to conserve must receive the condemnation of the courts. The conduct of these directors in concealing from their principals the fact that a large bonus was to be paid to consummate these loans is reprehensible. But, when to that fact is added the information that these same agents were to pay themselves with lavish liberality for performing their trust, their conduct descends to a degree of culpability especially shocking when the reputation of the men enlisting in the enterprise is considered. The principle that the directors of a corporation cannot profit out of the directorship to the detriment of the incorporators is elementary. Their acts are always subjected to jealous scrutiny. They bear a fiduciary relation to the stockholders of the company. They are the trustees of its property. As was said by Judge Grover in Coleman v. Railroad Co., 38 N. Y. 201, 202, they cannot make a bargain with themselves binding upon the company. Railroad Co. v. Boody, 56 N. Y. 456, 461. The corporation as an entity is a trustee of the stockholders (Wait, Insolv. Corp. § 41), and as such may be enjoined from making any illegal ex-

penditure of the money of the corporation (Id. § 587; Leslie v. Lor-illard, 40 Hun, 392). Nor is it necessary for the plaintiff to defer action until the directors have disbursed this money among themselves, and then bring an action at law to recover it back. The recovery would then be dependent upon the ability of the directors to refund the money. That they intend at once to carry out the plan set forth in the complaint, and pay themselves $30,000, and divide among themselves, or at best turn over to Director Jones, $70,000 of the treasury capital stock of the company, is not questioned. These directors (the participants, evidently, in this bounty) have already authorized the transaction by formal resolution, and its payment was about to be made when this injunction order was granted; and it is eminently proper to restrain the consummation of the deal. There seems to be no objection to the directors expending the money within the line of their duties, and as indicated in the notice submitted to the stockholders. The only criticism that seems to be made upon the directors is the payment of the bonus, and the injunction order, so far as it restrains that, is sustained, with $10 costs of this motion. Ordered accordingly.